# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

AUG 2 5 2008

ROBERT H. SHEMWELL, CLERK
BY _____
          DEPUTY

TRACI REYNOLDS

versus

QUERBES & NELSON, INC.

CIVIL ACTION NO. 06-1573

JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Querbes & Nelson, Inc. ("Querbes & Nelson"). See Record Document 21. For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

In December of 2004, the plaintiff, Traci Reynolds ("Reynolds") was hired as a Customer Service Representative ("CSR") by Querbes & Nelson, an insurance agency located in Shreveport, Louisiana. In that position, Reynolds was assigned to work as support staff for Carloyn Nelson ("Nelson"), the Personal Lines Manager and

an owner of the agency, and Andrew Mulford ("Mulford"), a Commercial Lines Producer.[1] Querbes & Nelson required all CSRs to have a license to sell insurance. Therefore, Querbes & Nelson paid for Reynolds's training in preparation for the licensing exam, and Reynolds subsequently obtained her insurance license in October of 2005. Soon after acquiring her license, Reynolds made her first request to Jeff Pitts ("Pitts"), the CSR supervisor, to become a producer. Reynolds was not promoted to that position.

During her first year of employment at Querbes & Nelson, Reynolds and Mulford had difficulties working together. Both Reynolds and Mulford talked with Pitts about the situation, and toward the end of the year, their relationship seemed to be improving. In October of 2006, Pitts prepared Reynolds's annual evaluation. Based on the comments provided by Nelson and Mulford, Pitts gave Reynolds a

---

[1] Personal lines are insurance packages sold to individuals, while commercial lines are insurance packages sold to businesses. A producer essentially is a salesperson for the agency who "produces" business. As such, producers spend much time outside of the office visiting prospective clients and soliciting new business.

rating of "average" and denied her a raise in pay.[2]  After receiving her evaluation,

Reynolds wrote an email to Pitts and Nelson complaining of gender discrimination.

See Record Document 21, Ex. 4.  Specifically, Reynolds stated, "I am writing this

memo to you both because I believe that I have been unfairly discriminated against

because of my gender and respectfully request an investigation into my complaint.

Not only has my salary been adversely effected, but it seems to me, that the only

positions that offer the optimum monetary reward are reserved for the men of this

agency." See id.  After receiving this email, Pitts met with Reynolds regarding her

allegations.  Reynolds was never promoted to the position of commercial producer.

At the time she complained of gender discrimination, all CSRs at Querbes & Nelson

were female.[3]

---

[2]Pitts claims that the reason Reynolds was not given a pay increase was
because her salary was set at the high end of the CSR pay scale when she was
hired because he thought Reynolds had great potential as a CSR, even though she
did not have CSR training when she was hired.  See Document 21, Ex. 2 at 74-75.

[3]The plaintiff alleges that all producers at Querbes & Nelson at that time
were male.  However, there is some disagreement between the parties whether
Carolyn Nelson, who was a part-owner of the agency and personal lines manager,
was considered a producer.  The court declines to make this determination as,
either way, it does not affect the outcome of this case.

Reynolds subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Approximately six months after filing this claim, on June 9, 2006, Reynolds's employment with Querbes & Nelson was terminated. The reason stated for Reynolds's termination was excessive absences caused by her epilepsy.[4] Reynolds then filed the instant suit seeking damages for violation of Title VII and state law.[5] See Record Document 1. Querbes & Nelson then filed a motion for summary judgment, arguing that the plaintiff's claims should be denied as a matter of law. See Record Document 21.

## II. LAW & ANALYSIS

### A. Summary Judgment Standard.

---

[4]Reynolds missed 25 days of work in a 21-week time period. The court notes a discrepancy in the defendant's motion for summary judgment regarding the number of Reynolds's absences. See Record Document 21 at 4, 21, and 22. However, the plaintiff does not refute either allegation–that she missed 21 days in a 21-week period or 25 days in a 21-week period. This discrepancy has no effect on the ruling of this court; applying either number, the court reaches the same conclusion.

[5]The court notes that the plaintiff, in her opposition to the motion for summary judgment filed by Querbes & Nelson, dismissed the claims for unequal pay based on gender and a gender-based hostile work environment that she made in her complaint. See Record Document 28 at 1, fn. 1. Because the plaintiff voluntarily dismissed those claims, the court does not address them in its ruling.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co. Inc., 402 F.3d 536, 540 (5th Cir. 2005). "[T]he nonmovant cannot satisfy [her] burden with conclusory allegations, unsubstantiated

5

assertions, or only a scintilla of evidence." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004). However, when ruling on a motion for summary judgment, "doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Bishop, 238 F.3d 586, 589 (5th Cir. 2000).

**B.    Gender Discrimination And Denial Of Promotion.**

First, Reynolds claims that Querbes & Nelson's refusal to promote her to the position of commercial lines producer qualifies as gender discrimination under Title VII. Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Claims of gender discrimination are assessed using a "modified McDonnell Douglas approach," under which the plaintiff first must demonstrate a prima facie case of discrimination. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citations and quotations omitted). The defendant then must "articulate a legitimate, non-discriminatory reason for its decision to terminate the

6

plaintiff." Id. "[I]f the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." Id.

To establish a prima facie case of discrimination under Title VII, the plaintiff must prove (1) that she is a member of a protected class, (2) that she was qualified for and applied for a position , (3) that she was rejected, despite being qualified for the position, and (4) that the employer continued to seek applications with complainant's qualifications. See Harris-Dukes v. Abbott Labs., 839 F.2d 962, 1103 (5th Cir. 1988); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). Because Reynolds has failed to prove three of these required elements, the court finds that she has not established a prima facie case of discrimination.

First, Reynolds has not proved that she actually was qualified for the position of commercial lines producer; in fact, the evidence on record indicates that she was

not capable of performing all of the requirements of the position. According to Pitts, being able to go out of the office and solicit business door to door was a part of the duties of a commercial lines producer. See Record Document 27, Ex. B at 57-58. The court is aware that Reynolds suffers from epilepsy. At her deposition, when asked by defense counsel, "Have you ever been instructed by your doctor not to drive because of your epilepsy?" Reynolds replied, "Yes, sir." Record Document 27, Ex. A at 8. Moreover, Reynolds admitted that this restriction on her driving has never been lifted by her doctor. See id.

Reynolds responds that her inability to drive was not a valid reason for Querbes & Nelson's refusal to promote her to the position of commercial lines producer. See Record Document 27, Ex. A at 5-6. She argues that she has "a very good support system" of people who potentially could have driven her to all her meetings. Id., Ex. A at 185. However, as the defendant correctly argues, Querbes & Nelson is not required to hire a driver so that Reynolds could perform her job duties. See Record Document 30 at 2. In addition, in his deposition, Pitts specifically recognizes the difficulties Reynolds had with regard to transportation. He states, "[W]ith her advising that she had to come to work late because she had to have her husband bring

her to work, and I guess prior to coming to work had to drop their children off to school and then in the evenings being able to be picked up by her husband after I guess her husband picked up the children from school, that really led me to believe that she didn't have the ability to go out and solicit business door to door." Record Document 27, Ex. B at 58. Thus, Reynolds struggled with transportation while a CSR, a stationary position that required Reynolds to appear only at the offices of Querbes & Nelson.

Similarly, Reynolds alleges that she was never told that her inability to drive was the reason she was not promoted. See Record Document 27 at 6. This accusation, whether truthful or not, does not render Reynolds capable of driving an automobile. Therefore, the argument is irrelevant to the claim that she was incapable of performing the duties of the position.

In addition, Reynolds claims that, according to Carolyn Nelson, driving was not a requirement for the position. See id. As evidence, Reynolds points to the fact that, when asked what the "minimum requirements" for being a producer were, Carolyn Nelson replied, "You have to be licensed." Record Document 27, Ex. C at 27. This is a statement of the bare minimum requirement of a producer; it is not a list

9

of the requirements of the position or an indication of the qualities Querbes & Nelson consider vital for a producer to be successful. Carolyn Nelson's failure to mention driving does not make it unnecessary. In addition, as indicated above, Pitts, then the commercial lines producer manager, stated that an integral part of the producer position involves meeting with clients and soliciting new business. The record clearly indicates that driving was necessary to the position of commercial lines producer, and Reynolds was under orders by her doctor not to drive during this time period. Therefore, the court finds that Reynolds has failed to show that she was qualified for the position of commercial lines producer.

Second, in showing that she applied for the desired position–here, that of commercial lines producer–Reynolds must establish that she applied for a position for which Querbes & Nelson was actively seeking applicants. See Harris-Dukes, 839 F.2d at 1103-04. The court finds that she has failed to do so. In support of her argument, Reynolds claims that it was the policy of Querbes & Nelson to continually seek qualified producers and that no set vacancy postings or application process for such positions existed. See Record Document 27 at 4-5. In her deposition, Carolyn Nelson testified that the agency was "always looking" for new producers and that

there essentially was always an opening for a producer at the agency. See Record Document 27, Ex. C at 73. In addition, Pitts testified that the agency did not specifically limit the number of producers it could employ at a given time. See Record Document 27, Ex. B at 21.

While the court agrees that this indicates the general policy of Querbes & Nelson with regard to the hiring of insurance producers, the record indicates–and Reynolds fails to adequately refute–that Querbes & Nelson specifically was not hiring new producers at the time Reynolds made her request for a promotion. According to Pitts, during a meeting with Reynolds and Carolyn Nelson to discuss the email Reynolds sent alleging gender discrimination, he told Reynolds that "[a]t that time...we were not looking to add to our number of producers. We currently had probably three producers in training. I felt that was a lot. I felt that was a lot, and I was trying to get them up and running and getting them as I call it, validated in their role.... I mentioned to [Reynolds] at that point and time we were not looking to add to our numbers of producers." Record Document 27, Ex. B at 85-86. Moreover, when specifically asked by defense counsel at her deposition if she was aware that Querbes & Nelson was "engaged in any search to find new producers to bring in the

agency" in October of 2005, Reynolds responded, "No, sir." See Record Document 27, Ex. A at 119. Therefore, the court finds that Reynolds has failed to prove that she applied for a position for which Querbes & Nelson was actually seeking applicants.

Third, Reynolds has not demonstrated that Querbes & Nelson continued to seek applicants with her qualifications after her request for promotion was denied. In fact, Reynolds herself stated that "[she] was not seeking a promotion that was offered or obtained by anybody else." See Record Document 21, Ex. 1 at 119. She further admits that the agency did not hire any other producers between the time she received her performance review and her termination. See id. at 118-19. Therefore, because the court finds that Reynolds has failed to set forth a prima facie case of discrimination, it need not examine this claim further. Reynolds's claim of gender discrimination and denial of promotion is to be dismissed.

## C. Unlawful Discharge.

Next, Reynolds claims that she was unlawfully discharged in violation of the Americans with Disabilities Act ("ADA"). Specifically, Reynolds argues that she was fired because of excessive absences, which, in turn, were caused by the seizures she suffered as a result of her epilepsy. Thus, she claims that she was unlawfully

discharged as a result of her disability.

In assessing such a claim, the court applies the same burden-shifting analysis as explained in the previous section. See McInnis v. Alamo Cmty Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000). To establish a prima facie case of discrimination, the plaintiff must demonstrate (1) that she is disabled or is regarded as disabled, (2) that she is qualified for the job, (3) that she was subjected to an adverse employment action based on her disability, and (4) that she was replaced by or treated less favorably than employees who are not disabled. See id. at 279-80. The court finds that Reynolds has not demonstrated that she was qualified for the position of CSR.

To prove that she is qualified for a position under the ADA, a plaintiff must show that she could perform the essential functions of the job with or without reasonable accommodation. See Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998). "[R]egular attendance is an essential function of most jobs." Id. at 727. It is undisputed that Reynolds missed 25 days in a 21-week period. The evidence indicates that Reynolds could not attend work often enough to complete her phone calls, renewal policies, endorsements, and marketing, the main work activities Reynolds claims she performs each day. See Record Document 21 at 21. Moreover,

13

nothing in the record indicates that Reynolds would be able to improve her attendance record. "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) (citations and quotations omitted). Therefore, Reynolds has failed to prove a prima facie case of unlawful discharge under the ADA, and the court need not further examine this issue. This claim is to be dismissed.

## D. Retaliation.

Additionally, Reynolds alleges retaliation against Querbes & Nelson as a result of her discrimination claim filed with the EEOC.[6] To establish a prima facie case of

---

[6] In her complaint, Reynolds originally alleged unlawful retaliation against Querbes & Nelson in violation of both Title VII and state law. However, Louisiana Revised Statute section 51:2256 does not state a cause of action for retaliation. See Lowry v. Dresser, Inc., 893 So.2d 966, 967 (La. App. 3d Cir. 2005). Additionally, the provision of the Louisiana Human Rights Act cited by the plaintiff (La. R.S. 51:2242) which made retaliatory termination unlawful subsequently has been repealed. See Smith v. Parish of Washington, 318 F.Supp.2d 366 (E.D. La. 2004). As correctly noted by the defense, and not challenged by the plaintiff, Reynolds has no state law claim for retaliation. Therefore, the court examines Reynolds's claim of unlawful retaliation only under Title VII.

unlawful retaliation under Title VII, the plaintiff must show: (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. See Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007) (citations and quotations omitted). Filing a discrimination claim is a protected activity, and an adverse employment action occurred--the plaintiff was fired from Querbes & Nelson. Therefore, the issue here is whether the plaintiff has established a causal link between filing her discrimination claim and her employment being terminated. The court finds that she has not.

"[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." Roberson v. Alltel Info. Servs., 373 F.3d 647, 655 (5th Cir. 2004) (citations and quotations omitted) (emphasis in original). Plaintiff must offer evidence to prove that her filing of the complaint with the EEOC caused her termination from Querbes & Nelson. See id. In her deposition, Reynolds testified that she did not believe that the proffered reason for her termination--her poor attendance--was the true reason she was fired. See Record Document 27, Ex. A at 201. When asked what she thought were

the real reasons for her termination, Reynolds stated, "Because I was a very hard worker, and because other people missed work. I believe if I had not filed a complaint with the EEOC and if my investigator had not called the office that morning, I would not have lost my job."[7] Id. Reynolds then replied, "No," when asked if there were any other reasons that she believed she had been terminated in retaliation for her complaint. Id. at 202.

The court finds that this evidence is not adequate to establish a link between the adverse employment action and the protected activity. The first two reasons given—because she was a hard worker and because other people had missed work—offer no link between her termination and her EEOC filing. The third proffered reason—the alleged phone message from an EEOC investigator—is not sufficient to establish such a direct link. First, the plaintiff alleges that someone at Querbes & Nelson listened to the voice mail. However, she cannot identify the person, nor can

---

[7]Reynolds alleges that on the morning of the day on which she was fired from Querbes & Nelson, she received a voice mail from Madoline Bealer with the EEOC, stating that Ms. Bealer was going to conduct interviews of the employees at Querbes & Nelson that day. See Record Document 27, Ex. A at 201. Reynolds claims that the voice mail "had been checked" but that she did not know who had listened to her message. Id.

she offer any proof that any employee at Querbes & Nelson was aware of the phone call. See id. at 201-02. Second, the defendant offered into evidence the call log from the EEOC's investigative file in the case of Traci Reynolds v. Querbes & Nelson. Such a call is not evidenced in the call log. See Record Document 30, Ex. 7. Therefore, the court finds that this unsubstantiated allegation alone is not sufficient evidence of a direct causal link.

In retaliation claims, a plaintiff can also prove causation by demonstrating a sufficient temporal link between the protected activity and the adverse employment action. See Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002). Temporal proximity between engaging in the protected activity and the adverse employment action can prove the element of causation only "when the protected act and the adverse employment action are very close in time." Washburn, 504 F.3d at 511 (citations and quotations omitted). In this case, more than six months passed between the time Reynolds filed her complaint and her termination. This time allegation, without more, is not sufficient to create a causal link. See Raggs, 278 F.3d at 471-72 (five month period between commencement of litigation and refusal to hire, without further evidence of retaliation, is insufficient to sustain a claim of retaliation).

17

A six-month time lapse does not meet the "very close in time" standard required by law.[8]

In an attempt to prove a shorter time period between protected activity and adverse employment action, Reynolds argues that an employee is not required to have suffered an ultimate employment action to state a valid claim for retaliation. See Record Document 27 at 14. Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006) (citations and quotations omitted). The court agrees. However, in her opposition to the defendant's motion for summary judgment, while Reynolds makes the claim that "[a]dditional adverse actions occurred," she does not explain or even list them, other than to make the general

_____

[8]The court also notes that according to the Fifth Circuit, if a defendant has stated a legitimate, nondiscriminatory reason for firing the plaintiff–which the court has found–"without more than timing allegations...summary judgment in favor of [the defendant] [i]s proper." Strong v. Univ. Healthcare Sys. L.L.C., 482 F.3d 802, 807-08 (5th Cir. 2007) (citations and quotations omitted).

statement that "after she made her internal complaint of gender discrimination, her supervisors avoided her by providing her less guidance and ostracizing her." See Record Document 27 at 15. Instead, she simply reaches the conclusion that "[a]ll of these actions constitute adverse actions under the Burlington standard" without explaining to the court what those alleged actions were and how they rose to the legal standard of "materially adverse." Moreover, in the pages of deposition testimony cited by the plaintiff in support of this conclusion, Reynolds only references the actions of co-workers–none of whom held a supervisory position over her–which included "cold treatment," "dirty looks," "whispering behind [her] back," and not "acknowledging [her] existence." Record Document 27, Ex. A at 175-76. The court finds that Reynolds has failed to prove that any of these alleged actions–diffident treatment by co-workers–qualifies as "materially adverse." Therefore, the adverse action in question in this case is the termination of Reynolds's employment by Pitts, and as explained above, the plaintiff has failed to prove a causal link between her termination and her filing of a complaint with the EEOC.

Although the court has found that Reynolds has failed to prove a prima facie case of unlawful retaliation, in an abundance of caution, the court turns to Reynolds's

claim that the proffered reason for her termination–attendance–was merely a pretext for retaliation. Specifically, Reynolds argues that she never received a verbal or written warning regarding her attendance in accordance with the progressive discipline policy adopted by Querbes & Nelson which would require such warnings before termination. See Record Document 27 at 18-19. The court rejects this argument as well.

The court is aware that Querbes & Nelson did, indeed, have a progressive discipline policy that involved verbal and/or written warnings prior to termination and that such policy was not followed with regard to Reynolds and her excessive absences. See Record Document 27, Ex. D at 70, Ex. E at 46-47, and Ex. B-2 at 13. However, "a defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 346 (5th Cir. 2007). (citations and quotations omitted). Reynolds has not offered proof on the record that any male employee had an equal number of unexcused absences and continued to

work at Querbes & Nelson. Moreover, the failure to follow the progressive discipline policy does not change the fact that Reynolds missed 25 days of work in 21 weeks, more than her allotted personal and sick leave. Therefore, the court finds that Reynolds has failed to prove a prima facie case of retaliation and has not shown that poor attendance–which Reynolds certainly had–was a pretext for retaliatory dismissal. This claim is to be dismissed.

**E.      Intentional Infliction Of Emotional Distress.**

Finally, Reynolds claims intentional infliction of emotional distress as a result of her treatment by the defendant. In order to recover for intentional infliction of emotional distress, Reynolds must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991). The Louisiana Supreme Court further explained that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

21

Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.

The court recognizes that intentional infliction of emotional distress can occur in a work environment. See Bustamento v. Tucker, 607 So.2d 532, 538 (La. 1992); White, 585 So.2d at 1210. However, "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." White, 585 So.2d at 1210.

Certainly nothing in the record shows conduct by Querbes & Nelson that "go[es] beyond all possible bounds of decency" and is "atrocious and utterly intolerable in a civilized community." Id. at 1209. The court has already determined that no gender discrimination, unlawful discharge, or retaliation occurred. Reynolds also testified that she overheard several comments in the workplace that she perceived as derogatory toward women. See Record Document 27, Ex. A at 129-30. However, none of these comments were directed at Reynolds, and case law holds that insults and indignities are not sufficient grounds for a claim of intentional infliction of emotional distress. See White, 585 So.2d at 1209. Additionally, Reynolds testified

that she suffered seizures, migraines, and depression, in addition to "sleeping a lot" and "cr[ying] for no reason," as a result of the stress caused by her treatment at Querbes & Nelson. Id. at 234. Even assuming the presence of these physical ailments, about which the court does not make a finding, the conduct by the defendant, as stated before, does not even come close to being "extreme and outrageous," the standard required by law. Therefore, Reynolds's claim for intentional infliction of emotional distress is to be dismissed.

### III. CONCLUSION

Based on the foregoing analysis, the defendant's motion for summary judgment (Record Document 21) is **GRANTED**.

A judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 25ᵗʰ day of August, 2008.

_____
JUDGE TOM STAGG